UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MARTHA R. L., | No. ED CV 18-2207-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Martha R. L.[1] ("plaintiff") filed this action on October 17, 2018, seeking review of the Commissioner's[2] denial of her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

to proceed before a Magistrate Judge on November 5, 2018, and November 19, 2018. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on March 3, 2020, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born in 1956. [Administrative Record ("AR") at 189, 193.] She has past relevant work experience as a childcare worker; as a guitar string maker; and as a fast food worker. [Id. at 28, 60-67.]

On February 26, 2015, plaintiff filed an application for a period of disability and DIB and an application for SSI payments alleging that she has been unable to work since November 1, 2012. [Id. at 20, 189-91, 193-99.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 128.] A hearing was held on August 24, 2017, at which time plaintiff appeared represented by an attorney, and testified on her own behalf, with the assistance of an interpreter. [Id. at 34-76.] A vocational expert ("VE") also testified. [Id. at 59-73.] On November 8, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from November 1, 2012, the alleged onset date, through November 8, 2017, the date of the decision. [Id. at 20-29.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 186-88.] When the Appeals Council denied plaintiff's request for review on August 28, 2018 [id. at 1-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468

F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

November 1, 2012, the alleged onset date.[3] [AR at 22.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the cervical spine, status post partial corpectomy and fusion in March 2013; and degenerative disc disease of the lumbar spine, status post anterior fusion and decompression in February 2015. [Id. at 22-23.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 24.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[5] as follows:

> [S]he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday with normal breaks; she can never climb ladders, ropes or scaffolds, but can occasionally perform all other postural activities; and she must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery.

[AR at 24.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff -- taking into account the fact that she is very limited in English -- is able to perform her past relevant work as a childcare worker, as a guitar string maker, and as a fast food worker, all as generally but not as actually performed. [Id. at 28-29, 67-69.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of November 1,

---

[3] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. [AR at 22.]

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

2012, through November 8, 2017, the date of the decision. [Id. at 29.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he failed to provide specific and legitimate reasons for giving little weight to the opinion of orthopedic surgeon Jeffrey Holmes, M.D., J.D., who conducted a qualified orthopedic medical evaluation for plaintiff's workers' compensation action on January 9, 2016. [JS at 4.] As set forth below, the Court agrees with plaintiff, and remands for further proceedings.

**A.   LEGAL STANDARD**

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[6] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original).  Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r Soc. Sec.

---

[6]   The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c.  Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016).  However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein.  See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).
6

Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**B.    DR. HOLMES**

By way of background, in February 2011 plaintiff injured herself while working in the childcare occupation that she had performed for 12 years. [JS at 4; AR at 216, 309.] She filed a worker's compensation claim, and had cervical spine surgery on March 21, 2013 -- a fusion of C4-C5. [AR at 309.] On February 17, 2015, due to ongoing lumbar symptoms, plaintiff underwent a lumbar fusion at L5-S1. [Id.] She received treatment from her treating physician, board-certified orthopedic surgeon, Eric Korsh, M.D., for her worker's compensation claim, and was evaluated by Dr. Holmes on January 9, 2016. [Id. at 306-31.]

Dr. Holmes' examination reflected that plaintiff's range of motion of the neck was reduced. [Id. at 311.] Specifically, flexion on the right was 40 degrees (normal is 50 degrees); extension on the right was 40 degrees (normal is 60 degrees); rotation was 50 degrees on the right and 60 degrees on the left (normal is 80 degrees); and lateral flexion was 30 degrees on the right and 20 degrees on the left (normal is 45 degrees). [Id.] Dr. Holmes also noted that the range of motion of plaintiff's neck "is accompanied with some cogwheeling[7] and some histrionic movements." [Id.] He stated that the numbers reflected his "best efforts at measurements of neck motion." [Id.] Dr. Holmes further stated that plaintiff complained of pain in her shoulders during the grip tests, both on the right and the left, and that a "full effort appeared to be provided" by plaintiff. [Id. at 312.] He also noted the following objective findings regarding plaintiff's cervical spine: "surgical scar, decreased range of motion of the cervical spine and paracervical tenderness as well as cervical spondylosis with cervical spinal stenosis, MRI documented." [Id.] He determined that she "would have to be precluded from repetitive motion of the cervical spine as well as precluded from cervical spine prolonged forward bent posturing." [Id. at 317.]

Dr. Holmes' examination of plaintiff's range of motion of her lumbar spine reflected that flexion on the right was 10 degrees (60 degrees is normal); extension on the right was 12 degrees (25 degrees is normal); and lateral bending on the right was 25 degrees and 12 degrees on the

---

[7] Cogwheeling is a "jerky" feeling in an arm or leg that the physician can sense when rotating that limb or joint. https://www.verywellhealth.com (last visited on March 6, 2020).

8

left (normal is 25 degrees). [Id. at 314.] Dr. Holmes noted that active range of motion of plaintiff's lumbar spine also "is accompanied by cogwheeling and histrionics." [Id.] He also noted that straight leg raising "shows marked cogwheeling on carrying ou[t] ankle dorsiflexion testing on both the right and the left." [Id.] He opined that despite surgical interventions, plaintiff has "marked ongoing symptoms in the cervical spine and the lumbar spine." [Id. at 315.] Dr. Holmes also noted the following objective findings relating to plaintiff's lumbar spine: "surgical scars, decreased range of motion of the lumbar spine and degenerative disc disease L5-S1 with some mild central canal stenosis pre-operatively." [Id. at 316.] He determined that plaintiff "would have to be precluded from heavy lifting as well as repeated bending and stooping. She will have to have a lifting restriction of 20 pounds on a repetitive basis." [Id.]

The ALJ discounted Dr. Holmes' opinions as follows:

> The undersigned gives partial weight, but not full weight, to the opinion of Dr. Holmes'. . . . Specifically, the undersigned gives less weight to the limitations precluding repetitive motion of the cervical spine as well as being precluded from cervical spine prolonged forward bent posturing because it is inconsistent with the other evidence in the record. For example, in July 2014, [plaintiff's] treating physician, Dr. Korsh, indicated that [plaintiff] had cervical surgery due to her industrial injury and her cervical symptoms have essentially resolved. Thus, the undersigned finds that there is no support in the record for a limitation of occasional head turning side to side as indicated by [plaintiff's] representative. However, the undersigned gives more weight to precluding [plaintiff] from heavy lifting up to 20 pounds on a repetitive basis and from repetitive bending and stooping. The undersigned has adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole.

[Id. at 27 (citations omitted).]

Plaintiff argues that the ALJ only gave one reason for discounting Dr. Holmes' cervical limitations, and that one reason was based only on Dr. Korsh's July 2014 progress report, which briefly stated that cervical surgery had essentially resolved plaintiff's symptoms. [JS at 6 (citing AR at 27, 446).] She argues that it was legal error for an ALJ to isolate portions of the record and focus on one treatment note "where Dr. Korsh was attempting to persuade the workers compensation board to approve [plaintiff's] lumbar fusion," and was not focusing on her cervical limitations. [Id. at 7 (citing AR at 446).] She submits that the fact that her *symptoms* resolved with her cervical surgery "does not mean that [she] does not continue to have *limitations* to her cervical spine due to the surgery." [Id. (emphasis added).] Plaintiff also argues that the ALJ failed to take

into account Dr. Holmes' objective findings, including limited range of motion of the neck's rotation and lateral flexion, diffuse inconsistent paracervical tenderness in the right and left posteriorly, and cogwheeling and some histrionic movements. [Id. (citing AR at 311).] She states that Dr. Holmes "specifically differentiated between cervical and lumbar objective findings as well as cervical and lumbar work restrictions," and the ALJ provided no other reason as to why only the cervical limitations were deserving of less weight. [Id. at 7-8 (citing AR at 311, 315-16, 317).] Moreover, plaintiff argues, in evaluating a medical opinion, an ALJ must consider the examining relationship, treatment relationship, supportability, consistency, specialization, and other factors, and that the ALJ here considered only *one* of those factors -- supportability. [Id. at 8-9 (citing 20 C.F.R. § 404.1527(c)).]

Defendant responds that Dr. Holmes noted that at the time of his January 2016 evaluation plaintiff was not scheduled to see a treating physician and was not taking any pain medication. [Id. at 10 (citing AR at 309).] Although plaintiff reported pain in her neck and back in January 2016, defendant notes that Dr. Holmes found "no atrophy, no muscle spasm, no tenderness in the cervical spine or suprascapular/trapezius areas, but some tenderness in her neck muscles." [Id. (citing AR at 311-12).] Defendant acknowledges that Dr. Holmes found plaintiff's range of motion in her neck to be "somewhat reduced," but states that he also found that "muscle strength in her shoulders and arms was normal," and her reflexes were "slightly increased." [Id. (citing AR at 313-14).] Defendant contends that the ALJ properly gave "great weight" to the opinions of the State agency reviewing physicians, who "reviewed the record and found Plaintiff could perform work consistent" with the RFC assessed by the ALJ. [Id. at 11 (citing AR at 27).] Defendant notes that Dr. Korsh's July 16, *2015*, report noted normal reflexes, sensation, and nerve impingement in plaintiff's arms and legs; normal gait; and no tenderness in the neck. [Id. at 12 (citing AR at 300[8]).] Defendant acknowledges Dr. Korsh's additional findings that plaintiff's neck range of motion was "decreased 'about 10%,'" that she was taking naproxen for pain, and that her pain was reported

---

[8] The Court finds no specific mention of nerve impingement on this page of the record. [AR at 300.]

to be at a level of 4-5 out of 10 with medication, and 6-7 out of 10 without medication. [Id. (citing AR at 302, 306).] Defendant submits, however, that substantial evidence supports the ALJ's interpretation of the facts and that Dr. Korsh's objective findings "are consistent with the ALJ's conclusion that no limitations on neck position were warranted, notwithstanding the opinion from Dr. Holmes." [Id.]

The Court observes that Dr. Korsh's July *2014* observation that plaintiff's cervical symptoms had resolved with surgery (the report actually cited to by the ALJ as support for discounting Dr. Holmes' opinion) -- was buried in his report that was prepared to *strongly* support plaintiff's need for *lumbar* surgery. [Id. at 443-49.] Dr. Korsh's observation, however, is not an indication that the surgery performed on plaintiff's neck eliminated limitations relating to repetitive neck movements or forward bending. Indeed, in March and April 2014 (one year after her cervical surgery and shortly before his July 2014 report), Dr. Korsh reported that plaintiff's cervical spine range of motion was "decreased about 20%" and, in May and June 2014, he reported it was "decreased about 10%." [Id. at 449, 451, 454, 475.] And, even in his July 2015 report (more than two years *after* her cervical surgery), a report that was referred to only by the Commissioner in the JS [see JS at 12] and not by the ALJ,[9] Dr. Korsh continued to note "about" a 10% decrease in cervical range of motion. [AR at 300; see also id. at 299 (April 2015 note reflecting 10% decrease in cervical range of motion and also that plaintiff "has had some recent neck pain . . . radiating to the left shoulder"), 302 (June 2015 note reflecting 10% decrease in cervical range of motion), 303 (May 2015 note reflecting same), 369 (September 2015 note reflecting same).] In short, Dr. Korsh in his July 2014 report did *not* conflate plaintiff's cervical *symptoms* that were resolved by her

---

[9] "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225-26 (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision."). The Court will not consider reasons for rejecting Dr. Holmes' opinions that were not given by the ALJ in the Decision. See Trevizo, 871 F.3d at 677 & nn. 2, 4 (citation omitted). Defendant did not discuss Dr. Korsh's July 2014 report -- the one that *was* relied on by the ALJ. [AR at 27.]

surgery, with any cervical *limitations* remaining after her surgery; indeed, the purpose of his July 2014 report was not to address cervical limitations at all, it was to make a strong case for lumbar surgery. [Id. at 444-47.] And, Dr. Korsh's reports are clear that plaintiff continued to experience decreased cervical range of motion several years after her surgery. The ALJ, however, who relied on only one July 2014 report -- in which Dr. Korsh primarily discussed plaintiff's need for lumbar surgery -- did not acknowledge any distinction between cervical symptoms necessitating surgery, and cervical limitations remaining after that surgery or resulting from that surgery.

Additionally, although the ALJ gave "great weight" to the State agency reviewing physicians, their reports were issued on May 21, 2015, and August 17, 2015, well prior to Dr. Holmes' January 2016 evaluation. As discussed above, when a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). In this case, Dr. Holmes is an orthopedic surgeon who first examined plaintiff in December 2011, and who examined her again on January 9, 2016, after reviewing "four inches of medical records," including his initial examination. [AR at 309.] Although Dr. Holmes noted that plaintiff last saw orthopedic surgeon Dr. Korsh in October 2015 and has "no further appointments scheduled," he also noted that plaintiff had instead been referred to a pain management specialist "but the services were never authorized so she never saw the doctor and was never treated by him." [Id.] Dr. Holmes also observed that plaintiff "has now run out of pain medications and they have been denied as well," and stated that she "[t]hus has no treating physician and no pain medication."[10] [Id.] In no way

---

[10] In his July 16, 2015, report, Dr. Korsh noted that prior to plaintiff's examination, he reviewed the results from a mandatory urinary drug screen ("UDS") administered at plaintiff's previous visit, to determine whether modifications to her treatment regimen were appropriate. [AR at 300.] Dr. Korsh stated the following:
> Incredibly, the UDS that are mandated by the guidelines was denied by an anonymous IMR [Independent Medical Review] physician and as such I will no longer be able to provide analgesic medications and [plaintiff] will now need to be
(continued...)

did Dr. Holmes imply that plaintiff was *not* in need of a treating physician/pain management specialist or pain medications. Indeed, at her January 2016 evaluation, plaintiff was complaining of posterior pain and stiffness in her cervical spine at a 7 on a 10-point scale, and "radiating to the trapezius ridge and shoulders bilaterally." [Id. at 310.] Dr. Holmes' assessment of plaintiff's cervical range of motion generally reflected decreased range of motion in all planes ranging from about a 20% decrease to more than a 50% decrease. [Id. at 311.] The ALJ discounted Dr. Holmes' opinion relating to plaintiff's cervical limitations based only on *one* report in the record from Dr. Korsh that, as discussed above, did not provide support for the ALJ's determination to give Dr. Holmes' opinion "less weight"[11] with respect to plaintiff's cervical limitations. Moreover, the State agency reviewing physicians also did not have the benefit of reviewing Dr. Holmes' July 2016 report.

Based on the above, the Court determines that the ALJ failed to provide a specific and legitimate reason supported by substantial evidence to discount Dr. Holmes' cervical limitations, based on Dr. Korsh's January 2014 report.

Moreover, the error in this case was not harmless because the VE testified that an individual with plaintiff's vocational history and RFC, and with the cervical movement limitations suggested by Dr. Holmes, would not be able to perform her past relevant work as generally performed. [Id. at 71-73.] As acknowledged by the ALJ, because of her age and other factors, "we have a grid at light" and if plaintiff is not able to do light work or some range of light work, then "she wins." [Id. at 67, 70.]

Remand is warranted on this issue.

---

[10](...continued)
referred to pain management. The pain is about the same and it is 5/10 with medications and 6-7/10 without.
[Id.]

[11] As the ALJ did not include any cervical movement-related limitations in his hypotheticals to the VE or in his RFC determination, in actuality he gave Dr. Holmes' assessment of plaintiff's cervical limitations *no* weight. [See AR at 67-69.]

13

# VI.

# **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there is an outstanding issue that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. Because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Holmes regarding plaintiff's cervical limitations, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Holmes. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Then, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a childcare worker, guitar string maker, and fast food worker, as generally performed.[12] If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

---

[12] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to perform her past relevant work as actually performed, i.e., at the medium level, or his determination to give "more weight" to Dr. Holmes' limitations precluding plaintiff from heavy lifting up to 20 pounds on a repetitive basis and from repetitive bending and stooping. [AR at 27, 28.]

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 9, 2020

　　　　　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE